STATE OF CONNECTICUT *v.* JOSEPH D. ASSUNTINO
ET AL.

LOISELLE, BOGDANSKI, PETERS, PARSKEY and WRIGHT, Js.

Argued January 9—decision released April 22, 1980

*Austin J. McGuigan,* chief state's attorney, with whom, on the brief, was *F. Jerome O'Malley,* deputy assistant state's attorney, for the appellant (state).

*Howard A. Jacobs,* with whom was *Phoebe Boyer,* for the appellees (named defendant et al.).

*David A. Reif,* with whom, on the brief, was *Anthony J. LaSala,* for the appellee (defendant Edward Compo).

*Fred H. White, Jr.,* with whom, on the brief, were *Fred H. White* and *Michael J. Flaminio,* for the appellee (defendant Nicholas V. Carrano).

PETERS, J. This case involves interpretation of the requirement of the wiretapping and electronic surveillance statute; General Statutes § 54-41c (8);[1] that applications for interception orders must contain statements of all previous wiretap applications involving the same subject. Finding a failure to disclose a previously authorized wiretap, the trial court, *Levister, J.* and *Belinkie, J.,* suppressed the state's evidence derived from the present wiretap, and rendered a judgment dismissing charges of professional gambling against the defendants Joseph D. Assuntino, Ronald Baia, Nicholas V. Carrano, John Computaro, Edward Compo, Felix Compo, Albert DiGrazia, Anthony Longobardi and William Murphy, Jr. The state has brought this writ of error to obtain review of the dismissal of these charges.

---

[1] Section 54-41c provides: "INFORMATION IN APPLICATION. Each application for an order authorizing the interception of a wire communication shall be made in writing upon oath or affirmation to a panel of judges. Each application shall include the following information: . . . (8) a full and complete statement of the facts concerning all previous applications known to the individual making the application, made to any panel of judges, for authorization to intercept, or for approval of interceptions of, wire communications involving any of the same persons, facilities or places specified in the application, and the action taken by the panel on each such application . . . ."

It is now clear that the state has a common-law right to bring a writ of error, unabrogated by statutory limitations on the state's right to appeal from a judgment of the former Court of Common Pleas, the trial court below. *State* v. *Assuntino,* 173 Conn. 104, 111–12, 376 A.2d 1091 (1977); see *State* v. *Falzone,* 171 Conn. 417, 370 A.2d 988 (1976). The scope of our review on a writ of error is, however, narrower than would be our review on appeal, reaching only those matters appearing as of record. *Reilly* v. *State,* 119 Conn. 217, 223, 175 A. 582 (1934); *State* v. *Muolo,* 118 Conn. 373, 383, 172 A. 875 (1934); *Brown* v. *Cray,* 88 Conn. 141, 143, 89 A. 1123 (1914); *Lippitt* v. *Bidwell,* 87 Conn. 608, 610, 89 A. 347 (1914); *Corbett* v. *Matz,* 72 Conn. 610, 615, 45 A. 494 (1900); see Maltbie, Conn. App. Proc. §§ 239, 314. A writ of error may not assign as error, nor may we review on a writ of error, allegations concerning the conduct of the trial court that contradict the record; *Corbett* v. *Matz,* supra, 613; see Maltbie, Conn. App. Proc. § 239; or findings of fact as distinguished from conclusions of law. *State* v. *Muolo,* 118 Conn. 373, 383, 172 A. 875 (1934); *Montville* v. *Alpha Mills Co.,* 86 Conn. 229, 232–33, 84 A. 933 (1912).

The record in this case includes the trial court's memoranda of decision on the defendants' motion to suppress[2] as well as the state's attorney's application for authority to intercept the wire communications of the defendant Felix Compo.[3] The record

---

[2] The state moved to have the memoranda of decision made part of the judgment file. See Maltbie, Conn. App. Proc. § 239.

[3] The application to wiretap Felix Compo became part of the record on appeal when the state appended the application to its objection to the defendants' motion to dismiss the writ of error on the basis of the intervening decision of this court in *State* v. *Grant,* 176 Conn. 17, 404 A.2d 873 (1978).

reveals the following: In October, 1974, the state obtained an order authorizing a wiretap of two named individuals who are not defendants in the present action. Authorized interception of the telephone facilities of these third parties led the state to overhear conversations of the defendant Felix Compo. When the state subsequently applied in December, 1975, to a three-judge panel for authorization to intercept the wire communications of "Fred Como, Felix Compo, aka Felix Campagnuolo and other unknown persons," at a purported professional gambling operation in East Haven, the state did not report its earlier interception. The wiretapping and electronic surveillance authorized pursuant to the December, 1975 application produced evidence that led to the arrest and the charge by information of the present defendants. After the earlier interception came to light, the defendants successfully moved to suppress the evidence so procured. Judge Levister's order of suppression was, upon reargument, affirmed by Judge Belinkie. When the case was reached for trial and the state declared that it had no other evidence to present, the court, *Belinkie, J.,* dismissed with prejudice the charges against the defendants and ordered them released. Pursuant to Practice Book, 1963, § 260 and General Statutes § 52-231, the state then moved for a special finding detailing the statutory and constitutional basis for the trial court's decision granting the motion to suppress. In response to the state's motion, the court specially found only that "there being no evidence presented by the state, the court dismissed the charges against all defendants with prejudice."

The judgment of dismissal was a final judgment which is subject to review on the record by a writ

of error. *Brown* v. *Cray,* 88 Conn. 141, 147, 89 A. 1123 (1914); *Lippitt* v. *Bidwell,* 87 Conn. 608, 610, 89 A. 347 (1914); Maltbie, Conn. App. Proc. § 237. That review necessarily encompasses examination of the trial court's decisions on motions to suppress, when dismissal is based on lack of evidence after suppression of the state's evidence before trial. See *State* v. *Grant,* 176 Conn. 17, 18, 404 A.2d 873 (1978); *Brown* v. *Cray,* supra, 144; Maltbie, Conn. App. Proc. § 239. Since the memoranda of decision were, at the request of the state, made part of the judgment file and hence of the record, the trial court's refusal to make a factual special finding is, in this case, irrelevant to our review and warrants no further comment. The record before us is adequate for present purposes.

Two questions are before us for resolution: (1) Was the wiretap application defective for failure to disclose the prior interception of Compo's conversations? (2) Was the application defective for failure to contain the oath or affirmation of the state's attorney? The defendants also urge that we consider whether our action may amount to violation of their right against double jeopardy but, as will appear below, we need not reach that question.

I

The authority to wiretap that is contained in General Statutes § 54-41c (8) requires strict compliance with the requirement that each application shall include "a full and complete statement of the facts concerning all previous applications . . . for authorization to intercept, or for approval of interceptions of, wire communications involving any of the same persons, facilities or places specified in the application . . . ." Must a previous application

be disclosed when it involved a different person, facility or place but resulted in the interception of a communication involving the subject of the present application? We agree with the state that such disclosure is not required.

The language of § 54-41c (8) requires disclosure of information about prior *applications* to intercept, not about prior *interceptions.* By familiar rules of statutory construction, we derive legislative intention from the language of the statute that we must interpret, so long as that language is, in context, plain and unambiguous. *State* v. *Grant,* 176 Conn. 17, 20, 404 A.2d 873 (1978); *Baston* v. *Ricci,* 174 Conn. 522, 528, 391 A.2d 161 (1978); *Royce* v. *Heneage,* 170 Conn. 387, 391, 365 A.2d 1109 (1976); *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 410–11, 311 A.2d 65 (1972); *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 376, 279 A.2d 561 (1971); *State* v. *Taylor,* 153 Conn. 72, 82, 214 A.2d 362, cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1965). There is no reason to assume that the legislature intended to use the words "application" and "interception" interchangeably, or that application should be construed to have anything other than its ordinary meaning of "preferring a request or petition to or before a person. The act of making a request for something." Black's Law Dictionary (5th Ed. 1979). The language of the statute affords no basis for the trial court's conclusion that "application" should be read to include "interception."

Federal cases interpreting similar language in 18 U.S.C. § 2518 (1) (e)[4] support our interpretation

[4] 18 U.S.C. § 2518 provides, in relevant part: "(1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath

of our statute. They too have held that an application to intercept the conversations of a particular person need not reveal prior interceptions of that person's conversations authorized by an earlier application directed at a different target. *United States* v. *Easterling,* 554 F.2d 195, 196 (5th Cir. 1977); *United States* v. *Sklaroff,* 552 F.2d 1156, 1160 (5th Cir. 1977); *United States* v. *Florea,* 541 F.2d 568, 575–76 (6th Cir. 1976); *United States* v. *Kilgore,* 518 F.2d 496, 500 (5th Cir. 1975); *United States* v. *Bellosi,* 501 F.2d 833, 838–40 (D.C. Cir. 1974); *United States* v. *Martorella,* 455 F. Sup. 459, 460–61 (W.D. Pa. 1978); *United States* v. *Chiarizio,* 388 F. Sup. 858, 874 (D. Conn.), aff'd, 525 F.2d 289 (2d Cir. 1975); see also *State* v. *Rowman,* 352 A.2d 737, 739 (N.H. 1976). In *State* v. *Grant,* 176 Conn. 17, 25, 404 A.2d 873 (1978), and *State* v. *DeMartin,* 171 Conn. 524, 534–45, 370 A.2d 1038 (1976), we noted the close proximity of this federal legislation to our statute and the propriety of looking to federal interpretation for guidance in determining an appropriate state standard.

Our construction of the statute is not only consistent with federal cases under the federal statute but is also in accord with the articulated standards for protection of privacy under the fourth amendment to the United States constitution and article first, § 7 of the Connecticut constitution. The failure to reveal third-party interceptions does not amount

or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information: . . . (e) a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire or oral communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application . . . ."

to the "blanket grant of permission to eavesdrop
. . . without adequate judicial supervision or pro-
tective procedures" that was condemned in *Berger*
v. *New York,* 388 U.S. 41, 60, 87 S. Ct. 1873, 18
L. Ed. 2d 1040 (1967). The application procedure
still requires "detached scrutiny by a neutral magis-
trate"; *Katz* v. *United States,* 389 U.S. 347, 356, 88
S. Ct. 507, 19 L. Ed. 2d 576 (1967); who is free to
inquire into prior interceptions should such an
inquiry appear appropriate. See also *United States*
v. *Giordano,* 416 U.S. 505, 514–15, 94 S. Ct. 1820,
40 L. Ed. 2d 341 (1974); *Gelbard* v. *United States,*
408 U.S. 41, 46–47, 92 S. Ct. 2357, 33 L. Ed. 2d 179
(1972).

The trial court was therefore in error in deter-
mining that the state's attorney's application for
permission to intercept the wire communications of
the defendant Felix Compo was deficient for failing
to disclose prior interceptions of Compo's conversa-
tions with others. The state's application is, how-
ever, vulnerable on another ground.

## II

Subsequent to the proceedings in the trial court,
we decided, in *State* v. *Grant,* 176 Conn. 17, 23–24,
404 A.2d 873 (1978), that an application for a wire-
tap authorization must be made upon oath or affirm-
ation of the state's attorney applying for the author-
ization. See General Statutes §§ 54-41b[5] and

[5] Section 54-41b provides, in relevant part, "APPLICATION FOR ORDER AUTHORIZING INTERCEPTION. The state's attorney for the judicial district in which the interception is to be conducted may make appli-cation to a panel of judges for an order . . . ." Under this statute, only the state's attorney is authorized to submit an application for a wiretap order. *State* v. *DeMartin,* 171 Conn. 524, 543, 370 A.2d 1038 (1976).

54-41c.[6] Since *State* v. *Grant* held that the state does not satisfy this requirement merely by having the state's attorney execute an acknowledgement on the application form, we must inquire into the application before us to determine whether or not the rule of *State* v. *Grant* has been satisfied. If the application is improper, the statute itself, General Statutes § 54-41m, provides that unauthorized and hence unlawfully intercepted communications "or evidence derived therefrom" may be suppressed upon the motion of "[a]ny aggrieved person in any trial . . . before any court." "[T]he failure of the appropriate state's attorneys to submit their respective applications under oath goes to the heart of the 'reviewing or approval functions' established by the legislature"; *State* v. *Grant,* supra, 26; so that a motion to suppress can properly be granted. *State* v. *Grant* therefore furnishes an alternative basis for sustaining the judgment of the trial court in this case. *Royce* v. *Freedom of Information Commission,* 177 Conn. 584, 588, 418 A.2d 939 (1979); *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978); *Morris* v. *Costa,* 174 Conn. 592, 597–98, 392 A.2d 468 (1978); *O'Keefe* v. *Atlantic Refining Co.,* 132 Conn. 613, 619, 46 A.2d 343 (1946); Maltbie, Conn. App. Proc. § 237.

Examination of the record compels us to agree with the defendants-in-error that *State* v. *Grant* requires affirmance of the dismissal of the charges against them. The wiretap application was appended to the state's objection to a motion by the defendants to dismiss the writ of error on the basis

[6] Section 54-41c provides, in relevant part, "INFORMATION IN APPLICATION. Each application for an order authorizing the interception of a wire communication shall be made in writing upon oath or affirmation to a panel of judges. . . ."

of *State* v. *Grant*.[7] The application contains the signature of the state's attorney over the subscript "Affirming the Above Information." That language does not make the signature more effective than the acknowledgement that was found wanting in *State* v. *Grant*. An oath or affirmation is a solemn and formal declaration that the contents of a declaration, written or oral, are true, and it must be administered in accordance with the ceremony and procedures set forth in General Statutes §§ 1-22 to 1-25. "An oath . . . signifies the undertaking of an obligation 'to speak the truth at a time when . . . testimony may deeply affect the rights and the character of individuals.' *Chapman* v. *Gillet,* 2 Conn. 40, 44 [1816]. Consequently, the protection afforded by an application sworn to by the applicant state's attorney does provide greater protection than an application merely acknowledged, for the oath imposes upon the applicant greater responsibility. General Statutes §§ 54-41b and 54-41c mandate that this responsibility be undertaken with every application." *State* v. *Grant,* supra, 24. The absence of a formal oath or affirmation is clear from the face of the wiretap application, and hence reviewable on a writ of error. The defendants are not precluded from raising the insufficiency of the state's attorney's purported affirmation at this time, since the intervention of our decision in *State* v. *Grant* constitutes an exceptional circumstance under which this court will consider newly raised claims that the trial court did not have the opportunity to consider. See *State* v. *Crawford,* 172 Conn. 65, 68, 372 A.2d

---

[7] That motion was denied without prejudice pending our review of the record as a whole.

154 (1976); *State* v. *Malley,* 167 Conn. 379, 387–88, 355 A.2d 292 (1974); *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

There is no error.

In this opinion the other judges concurred.