NYKIA R. SMITH, PPA, ET AL. *v.* LILLIAN M. SMITH

SUPERIOR COURT    JUDICIAL DISTRICT OF    DOCKET No. 68079
NEW LONDON

Memorandum filed September 17, 1984

*Sidney Axelrod,* for the plaintiffs.
*Abram A. Washton,* for the defendant.

PURTILL, J. In this probate appeal the court finds the following factual situation, upon which the judgment herein is based:

On March 8, 1978, Denise Renee Fisher gave birth to a baby girl at Lawrence and Memorial Hospitals in the city of New London. Prior to the birth of said child during the period May through November, 1977, Miss Fisher had sexual relations with Gary Ernest Smith and no one else. During the year 1979, Fisher, the child and Smith were living together and at the time of Smith's death the three were also living together.

On March 13 and 14, 1978, Smith and Fisher executed a documented entitled "Statement of Parentage" in which the parties, listing separate addresses, declared themselves to be, respectively, the natural father and the mother of the child born to Fisher on March 8, 1978, and agreed that all "personal particulars pertaining to the father" could be entered in the child's birth certificate and that the child's name on the certificate would read "Nykia Renee Smith." Subsequently, the birth certificate was prepared to reflect this stipulation so that it listed Gary Ernest Smith as the father of the child.

Smith's federal income tax returns for the years 1979 and 1980 indicated that he was "Head of Household," with qualifying person being his unmarried child Nykia Renee Smith (1979) and Nykia (1980). On both tax returns Smith placed his signature in the block indicated by the words "Please sign here," which appeared under the following statement: "Under the penalties of perjury, I declare that I have examined this statement including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge."

On November 27, 1981, Smith died, a resident of the city of New London.

In December, 1981, Fisher, her father and the defendant Lillian M. Smith, mother of the decedent Gary Ernest Smith, met with the senior member of the firm now representing the defendant. Fisher's purpose in attending the meeting was to secure legal services and advice on her daughter's behalf. The overall purpose of the meeting was to execute the application of the defendant for appointment as administratrix of her son's estate. This application was made out and subsequently filed with the Probate Court for the district of New London. Pursuant to General Statutes § 45-275 the only heirs listed on the form were Mrs. Smith and the decedent's father, James W. Smith. Neither Fisher nor her daughter received formal notice from the Probate Court of the hearing on the application and no waivers were ever executed on behalf of such parties.

As a result of this application, on December 15, 1981, the defendant was appointed as administratrix of her son's estate.

Nykia Renee Smith, the plaintiff acting by her mother and next friend, Denise Renee Fisher, has instituted

the present appeal from the action of the Probate Court in granting letters of administration to the defendant claiming that she was not given legal notice as required by law.

Appeals from probate are strictly statutory actions and bring before the court for review only the order appealed from. *Satti* v. *Rago,* 186 Conn. 360, 364, 441 A.2d 615 (1982). General Statutes § 45-195 (b) requires that notice of applications for administration be given "all persons interested in such estate." This has been interpreted to mean that notice should go to all who are entitled to share in a decedent's property under the laws of intestacy. Wilhelm, Conn. Estate Practice, § 30. This is consistent with General Statutes § 45-195 (c), which limits appointment to persons entitled to share in the estate where possible and which restricts objections to heirs and creditors.

Children born out of wedlock such as the plaintiff here are entitled to share in their father's estate where the father has been adjudicated as such or there has been an acknowledgment of paternity under oath in writing as prescribed by General Statutes § 45-274 (b); Wilhelm, op. cit.

Here it is undisputed that the decedent has never been adjudicated the child's father. Her claim that she is entitled to notice, however, is based upon two theories: (1) that there had been an acknowledgment of paternity prior to death; and (2) that the Probate Court has the power to determine paternity in connection with probate of the estate.

The plaintiff's acknowledgment theory contends that the provision of General Statutes § 45-274 (b) (2) (B) (ii) have been complied with. This section requires that for a child born out of wedlock to share in its father's estate the acknowledgment of paternity must be under oath and in writing. The decedent did in fact acknowledge

his paternity of the plaintiff in writing by executing a "Statement of Parentage" on March 15, 1978, but this statement was not under oath.

The plaintiff claims, however, that the 1979 and 1980 federal income tax returns listing Nykia as his unmarried child complies with the statutory requirement and that his signature and declaration under the penalty of perjury constitutes an acknowledgment under oath.

The plaintiff's claim in this regard is not in accordance with the law. The statute in question requires that the acknowledgment be under oath. Chapter 4 of the General Statutes, entitled "Oaths," sets forth in detail the ceremony to be used by persons to whom an oath is administered, who may administer oaths and the form for oaths. It must be presumed that where the legislature prescribes that an acknowledgment be under oath, the oath should be administered in accordance with the provisions of chapter 4.

The affirmation contained in the decedent's income tax returns falls short of the legislative requirements for an oath and it cannot be concluded that the provisions of § 45-274 (b) (2) (B) (ii) have been complied with and that no valid acknowledgment of paternity was made before death. *State* v. *Assuntino,* 180 Conn. 345, 353, 429 A.2d 900 (1980); *Arnold* v. *Middletown,* 41 Conn. 206, 210 (1874).

The plaintiff also claims that she was entitled to notice since the issue of paternity could be decided by the Probate Court. In this contention the plaintiff relies to a large extent on *Anonymous* v. *Administrator,* 38 Conn. Sup. 91, 93, 463 A.2d 257 (1983), in which the court determined that the Probate Court, in ascertaining heirs and distributees under General Statutes § 45-272, had authority to determine paternity. Although the ruling of the court in that case may be

questionable due to *Hayes* v. *Smith,* 194 Conn. 52, 480 A.2d 425 (1984), such issue is not now properly before the court.

In this case we are limited solely to the issue on appeal, the failure of the Probate Court to give notice to the plaintiff of the hearing on the appointment of the administrator. *Satti* v. *Rago,* 186 Conn. 360, 364, 441 A.2d 615 (1982). Matters involving distribution of the estate under § 45-272 have not yet arisen and any consideration of such issues by this court at this time would be premature.

Accordingly, the issues having been resolved in favor of the defendant against the plaintiff, judgment may enter dismissing the appeal.